UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOSTON FISH MARKET, INC., and LOUI CONSTRUCTION CO., INC., | )<br>)<br>) 12 C 6751 |
| Plaintiffs, | )<br>) Judge Feinerman |
| vs. | )<br>) |
| EMS-USA INSULATED DOORS, INC., EMS ISOLIERTUREN GMBH, D&D TOTAL CONSTRUCTION, and MYERS MANAGEMENT, LLC, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Boston Fish Market, Inc. ("BFM") and Loui Construction Co., Inc. ("LCC") allege in this suit that EMS-USA Insulated Doors, Inc. ("EMS-USA"), EMS Isolierturen Gmbh ("EMS-Germany"), D&D Total Construction ("D&D"), and Myers Management, LLC ("Myers") are responsible for damages arising from the improper installation of industrial insulated doors at a BFM-leased facility in Des Plaines, Illinois. Doc. 1. The complaint asserts claims for breach of contract (Count I) and breach of warranty (Count II) against EMS-USA, EMS-Germany, and Myers, and a negligence claim (Count III) against all four defendants. Now before the court are five motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Two of the motions seek dismissal of Count III, the negligence claim. Docs. 20, 39. Plaintiffs do not oppose the motions, and in fact have moved to voluntarily dismiss Count III. Doc. 64. Because Defendants have not answered or moved for summary judgment as to Count III, the court will construe Plaintiffs' motion to voluntarily dismiss that count as a notice of

-1-

voluntary dismissal under Rule 41(a)(1)(A)(i). Accordingly, Count III is dismissed without prejudice and Defendants' motions to dismiss Count III are denied as moot.

Two other motions seek dismissal of LCC's claims. Docs. 22, 38. After granting Plaintiffs numerous extensions of time to respond to the motions in light of the parties' settlement discussions, Docs. 35, 45, 51, 57, the court entered a scheduling order setting April 30, 2013 as the deadline for LCC to respond to the motions to dismiss and May 21, 2013 as the deadline for Defendants to reply, Doc. 57. LCC never responded to the motions, which is fatal to its claims.

"If [a court is] given plausible reasons for dismissing a complaint, [the court is] not going to do the plaintiff's research and try to discover whether there might be something to say against the defendant's reasoning." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). Under such circumstances, then, a plaintiff's failure to respond to a defendant's motion to dismiss provides grounds for granting the motion. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) ("As to the defendants' motion to dismiss the complaint, Alioto waived his right to contest the dismissal by failing to oppose the motions."); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) ("[w]hile Lekas alleged in his complaint that his segregation was in retaliation for his filing of grievances, he did not present legal arguments or cite relevant authority to substantiate that claim in responding to defendants' motion to dismiss"); *Kirksey*, 168 F.3d at 1041 ("In effect the plaintiff was defaulted for refusing to respond to the motion to dismiss. And rightly so.").

Defendants have set forth plausible grounds to dismiss LCC as a plaintiff as to the contract and warranty claims; the negligence claim, having been dismissed, need not be

considered. Defendants plausibly contend that LCC acted only as BFM's disclosed agent, was not a party to the contract at issue, and therefore lacks the privity to bring suit on its own behalf. *See Szajna v. General Motors Corp.*, 503 N.E.2d 760, 764-65 (Ill. 1986) (lack of privity precludes warranty claim); *Law Offices of Colleen M. McLaughlin v. First Star Fin. Corp.*, 963 N.E.2d 968, 975 (Ill. App. 2011) ("only a party to a contract, or one in privity with a party, may sue on a contract"); *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1000-01 (N.D. Ill. 2008). Accordingly, LCC's claims are dismissed with prejudice.

The fifth motion, filed by EMS-Germany and Myers, seeks dismissal of the contract and warranty claims against them. Doc. 21. BFM responded to that motion, but only as to EMS-Germany and not as to Myers. Doc. 58. Myers plausibly argues that the contract and warranty claims against it should be dismissed because it lacked privity with BFM. *See Szajna*, 503 N.E.2d at 764-65; *Law Offices of Colleen M. McLaughlin*, 963 N.E.2d at 975; *IWOI, LLC*, 581 F. Supp. 2d at 1000-01. Accordingly, BFM's contract and warranty claims against Myers are dismissed with prejudice.

BFM does oppose dismissal of contact and warranty claims as to EMS-Germany. In evaluating EMS-Germany's motion to dismiss those claims, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in BFM's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

EMS-Germany argues that the complaint fails to state contract or warranty claims against it because "[a]ll of Plaintiffs' claims arise out of a contract between [them] and Defendant EMS-USA." Doc. 21 at 1. EMS-Germany is correct that the complaint alleges a contract only between BFM and EMS-USA, not between BFM and EMS-Germany. Doc. 1 at ¶¶ 13, 50; Doc. 1-1. In fact, the complaint's primary reference to EMS-Germany is that "EMS-Germany manufactured its doors in Germany and shipped them to EMS-USA for installation in the United States." *Id*. at ¶ 12. BFM contends, however, that even without privity of contract, EMS-Germany's status as EMS-USA's "parent corporation" means it "can be held directly liable if actively involved in the affairs of its subsidiary." Doc. 58 at 1.

Neither the contract nor the parties address choice of law. Because the alleged breaches of contract and warranty occurred in Illinois, and because Illinois is the forum State, the court will apply Illinois law. *See Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) ("Where the parties have not identified a conflict in state law, we will generally apply the law of the forum state."); *McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.") (internal quotation marks omitted); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) (same). The question whether EMS-Germany can be held liable in contract and warranty is governed by the direct participant liability doctrine. As the Supreme Court of Illinois has explained:

> [D]irect participant liability is a valid theory of recovery under Illinois law. Where there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy *and* carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent company could face liability. The key elements to

> the application of direct participant liability, then, are a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability. If a parent company specifically directs an activity, where injury is foreseeable, that parent could be held liable. Similarly, if a parent company mandates an overall course of action and then authorizes the manner in which specific activities contributing to that course of action are undertaken, it can be liable for foreseeable injuries. We again stress, though, that allegations of mere budgetary mismanagement alone do not give rise to the application of direct participant liability.

*Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007); *see also Grady v. Ocwen Loan Servicing, LLC*, 2012 WL 929928, at *2 (N.D. Ill. Mar. 19, 2012). BFM's invocation of the direct participant liability doctrine against EMS-Germany fails for two separate reasons.

First, Illinois courts have applied the doctrine only in the tort context, not as to contract or warranty claims. *See Forsythe*, 864 N.E.2d at 237-38 (adopting direct participant liability in a tort case); *Nelson v. Aurora Equipment Co.*, 909 N.E.2d 931, 935 (Ill. App. 2009) ("in *Forsythe*, our supreme court recognized the theory of direct-participant liability to impose a duty on a parent company for the *negligent acts* of its subsidiary") (emphasis added); *see also Phillips v. WellPoint Inc.*, 2012 WL 6111405, at *10 (S.D. Ill. Dec. 10, 2012) ("The *Phillips* plaintiffs fail to point to any Illinois authority applying the direct participant liability to a breach of contract claim, and the Court is unable to find any such authority that would change its reasoning as set forth in *Cima*."), citing *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 906 (S.D. Ill. 2008) (finding "no merit in the plaintiffs' theory of direct participant liability for breach of contract," and observing that "there is no authority from any Illinois state court employing the direct participant doctrine to make a corporation that is not a signatory to a contract a de facto party to the contract"). BFM does not cite any Illinois authority recognizing direct participant liability for contract or warranty claims, and it gives no basis to conclude that Illinois law would

apply the doctrine outside the tort context. BFM does cite *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345 (M.D.N.C. 1995), for the proposition that "under the theory of direct participant liability, an action can be maintained against a parent company for breach of warranty." Doc. 58 at 1. But *Dassault Falcon* applied Arkansas law, not Illinois law. 909 F. Supp. at 351-54. Moreover, the court's holding rested not on the direct participant liability doctrine, but rather on an aspect of Arkansas law allowing warranty claims to be brought against defendants not in privity with the plaintiff. *Id.* at 351, 354.

The question becomes, then, whether this court should take it upon itself to expand direct participant liability beyond the contours heretofore recognized by the Illinois courts. The Seventh Circuit has repeatedly cautioned that "[w]hen we are faced with two opposing and equally plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability." *Home Valu, Inc. v. Pep Boys–Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000); *accord*, *e.g.*, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007); *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 676 (7th Cir. 2002); *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000); *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996); *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc). Therefore, even if the question were close under Illinois law, the court would resolve the question in EMS-Germany's favor and hold that direct participant liability does not apply to contract and warranty claims.

Even if Illinois law recognized direct participant liability for contract and warranty claims, BFM's claims against EMS-Germany still would falter. The doctrine holds a parent

corporation liable for its subsidiary's wrongdoing only "where the parent directly participated in the subsidiary's unlawful actions." *Esmark, Inc. v. NLRB*, 887 F.2d 739, 755 (7th Cir. 1989); *see also Forsythe*, 864 N.E.2d at 237-38 ("the mere fact of a parent-subsidiary relationship, without a great deal more, does not give rise to liability") (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)); *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, 2012 WL 1886440, at *10 (N.D. Ill. May 22, 2012) (direct participant liability exists only where a parent corporation engages in actions "surpassing the control exercised as a normal incident of ownership") (internal quotation marks omitted). As noted above, "[t]he key elements to the application of direct participant liability … are a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability." *Forsythe*, 864 N.E.2d at 237. "Thus, if a parent company specifically directs an activity where injury is foreseeable, that parent could be held liable. Similarly, if a parent company mandates an overall course of action and then authorizes the manner in which specific activities contributing to that course of action are undertaken, it can be liable for foreseeable injuries." *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 2007 WL 3037098, at *6 (N.D. Ill. Oct. 16, 2007); *see also Forsythe*, 864 N.E.2d at 237 (same). A parent corporation may be held liable for its subsidiary's acts only when "the alleged wrong can be traced to the parent through the conduit of its own personnel and management." *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 833 (N.D. Ill. 2007) (internal quotation marks omitted).

The complaint makes no allegations regarding the corporate relationship between EMS-Germany and EMS-USA or about the level of control, if any, that EMS-Germany exerted over EMS-USA's procedures for installing the doors used in the Des Plaines facility. BFM's response

brief, which the court must consider on a Rule 12(b)(6) motion, states that "[o]n information and belief, EMS Germany was and is actively involved in the affairs of its subsidiary and partner, EMS-USA." Doc. 58 at 2. BFM's brief also attaches a November 2011 news article quoting EMS-USA's president as referring to EMS-Germany as "our mother company." *Id*. at 4. These meager facts do not come close to meeting the standard imposed by Illinois law for direct participant liability. *See Nathan*, 2012 WL 1886440, at *10 (dismissing a direct participant liability claim where the complaint failed to allege sufficient indicia of control relating to the relevant activity); *Holmes v. United Airlines, Inc.*, 2012 WL 245136, at *7 (N.D. Ill. Jan. 25, 2012) (same); *Sefton v. Totoya Motor Sales U.S.A.*, 2010 WL 1506709, at *4 (N.D. Ill. Apr. 14, 2010) (same); *Santora*, 2007 WL 3037098, at *6 (dismissing a direct participant liability claim because the complaint "fails to allege how the operating standards [promulgated by the parent company] contributed in any way to his injury").

The contract and warranty claims against EMS-Germany accordingly are dismissed. The dismissal is with prejudice. Because direct participant liability does not apply to contract and warranty claims, the flaw in those claims cannot be cured by repleading. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("Even though Rule 15(a) provides that 'leave shall be freely given when justice so requires,' a district court may deny leave to amend for … futility. The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citation and some internal quotation marks omitted). And even if direct participant liability conceivably could apply to contract and warranty claims, BFM's opposition brief does not request an opportunity to replead those claims against EMS-Germany. *See James Cape & Sons Co. v. PCC Constr. Co.*,

453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend).

\* \* \*

For the foregoing reasons, Count III is voluntarily dismissed without prejudice, LCC's claims are dismissed with prejudice, and the claims against Myers and EMS-Germany in Counts I and II are dismissed with prejudice. The only remaining claims are those brought in Counts I and II against EMS-USA. If BFM wishes to replead Count III against any defendant, it must first seek leave of court; the court does not anticipate that leave will be granted, but the possibility cannot be foreclosed at this point.

June 3, 2013

_____
United States District Judge